UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN P. WOODS,<br><br>                Plaintiff,<br><br>    v.<br><br>JEFFREY L. FATA, et al.,<br><br>                Defendants. | Civil Action No. 20-2221 (MAS) (RLS)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

SINGH, United States Magistrate Judge.

THIS MATTER comes before the Court upon the July 21, 2022 Motion by Plaintiff Ryan P. Woods ("Plaintiff"), seeking Leave to File a Second Amended Complaint ("SAC") to Amend/Correct the *Ad Damnum* Damages Amount claimed on his Standard Form 95 ("SF-95") to $5,000,000.00 (the "Motion"). (Dkt. No. 34). Defendants Jeffrey L. Fata ("Fata"), the Federal Housing Finance Agency Office of the Inspector General ("FHFA"), and the United States of America (collectively, "Defendants") oppose the Motion (Dkt. No. 39). Plaintiff did not file a reply. The Court considers the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's Motion to Amend/Correct *Ad Damnum* Damages is DENIED.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

This personal injury action arises out of a February 27, 2018 motor vehicle collision in Old Bridge, New Jersey and is brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Plaintiff alleges that Fata, while in the course of his employment with and in the service of FHFA, negligently operated the vehicle that collided with Plaintiff, causing severe personal

1

injuries resulting in permanent injury. (*See generally* Dkt. No. 1-1). As the facts are well-known to the parties and the Court, they are not set forth at length. Instead, only those facts and procedural history related to the instant application are discussed herein.

On February 27, 2018, following the accident, Plaintiff received treatment for his injuries at the Raritan Bay Medical Center Emergency Department, where he was diagnosed with cervical strain and cervical radiculopathy. (Dkt. No. 34-3 at p. 3). On March 8, 2018, Plaintiff's treating orthopedic surgeon, Sripad Dhawlikar, M.D., ("Dr. Dhawlikar") evaluated Plaintiff for cervical spine pain with radiation of pain, tingling, and numbness into both the upper extremities. At that time, Plaintiff complained of symptoms related to his left lower extremity, lower back, right upper extremity, and cervical spine. (*See* Dkt. No. 34-8 at pp. 3-4). Dr. Dhawlikar prescribed Plaintiff Mobic and Tramadol, and ordered physical therapy and magnetic resonance imaging ("MRIs") of Plaintiff's cervical and lumbar spines. (Dkt. No. 34-8 at p. 4). From March 15, 2018 through May 10, 2018, Plaintiff underwent physical therapy for his neck, left upper extremity lower back, and left leg pain. (Dkt. No. 34-8 at p. 4).

On March 23, 2018, Plaintiff served on the FHFA a SF-95 Notice of Claim alleging *ad damnum* of $1,000,000.00. (*See* Dkt. No. 34-2). At the time of service, "Dr. Dhawlikar clinically diagnosed . . . Plaintiff with a cervical herniated disc with cervical radiculopathy and lumbar spondylolisthesis of L4 with instability and vertical instability at L45." (Dkt. No. 34-15 at p. 10). The FHFA never adjudicated Plaintiff's administrative tort claim. (*See* Dkt. No. 39 at p. 19).

Plaintiff returned for follow-up visits with Dr. Dhawlikar regarding persistent pain on March 29, 2018, April 12, 2018, May 17, 2018, June 4, 2018, August 2, 2018, September 11, 2018, November 21, 2018, and March 21, 2019. (Dkt. No. 34-8 at pp. 4-5). Plaintiff also underwent fluoroscopic-guided caudal epidural steroid injections and epidurography by Dr. Dhawlikar on

May 17, 2018, July 6, 2018, August 17, 2018, and October 19, 2018. (Dkt. No. 34-8 at pp. 4-5). On March 25, 2019, Dr. Dhawlikar performed on Plaintiff surgical C5-C6 and C6-C7 anterior cervical discectomy decompression with a Mobic-C disc replacement procedure and application and removal of Gardner-wells tongs to the skull. (Dkt. No. 34-5; Dkt. No. 34-8 at p. 5). Plaintiff returned for post-operative follow-ups on March 26, 2019, April 4, 2019, and April 25, 2019. (Dkt. No. 34-8 at pp. 5-6). From May 1, 2019 through May 30, 2019, Plaintiff underwent physical therapy for post-operative management. (Dkt. No. 34-8 at p. 6). Plaintiff returned for follow-ups on May 30, 2019, July 18, 2019, and September 26, 2019. (Dkt. No. 34-8 at p. 6).

On January 31, 2020, Plaintiff filed his initial complaint in the Superior Court of New Jersey, Middlesex County. He subsequently filed his first amended complaint on February 6, 2020. (Dkt. No. 1-1). On February 28, 2020, Defendants removed the matter to this Court. (Dkt. No. 1).

On March 16, 2020, Dr. Dhawlikar authored a report regarding Plaintiff's condition, concluding that Plaintiff "sustained a cervical herniated disc at C5-6 with cervical radiculopathy, lumbar herniated disc at L4-5 with lumbar radiculopathy and aggravation of his lumbar disc degeneration, causally related to the motor vehicle accident on 2/27/18" and further noting that "[t]hese types of injuries are permanent in nature." (Dkt. No. 34-13 at pp. 3-11). Plaintiff returned for follow-ups with Dr. Dhawlikar on August 13, 2020, September 10, 2020, October 8, 2020, November 12, 2020, December 1, 2020, and April 29, 2021. (Dkt. No. 34-8 at pp. 6-7). On July 19, 2021, Dr. Dhawlikar penned a second report on Plaintiff's condition, reiterating that Plaintiff "had sustained permanent injuries to both cervical and lumbar spine" as a result of the 2018 motor vehicle accident and that Plaintiff continued to undergo treatment for his injuries and "may require possible surgical treatment for his lumbar spine in the future." (Dkt. No. 34-13 at pp. 13-19).

3

On October 13, 2021, Plaintiff obtained a second opinion from Nirav K. Shah, M.D., ("Dr. Shah") at Princeton Brain, Spine & Sports Medicine. (*See* Dkt. No. 34-8). After evaluating Plaintiff, Dr. Shah reviewed Plaintiff's medical history and, on January 17, 2022, opined that Plaintiff would require further surgical intervention, pain management, and therapy in the future. (Dkt. No. 34-8 at pp. 15-16). Plaintiff alleges that, based on Dr. Dhawlikar's and Dr. Shah's medical evaluations, his reduction of work life expectancy and diminished earning capacity translates into potential future loss wages ranging from $915,434.00 to $1,705,437.00, and present value of future life care cost of $2,205,034.00. (*See* Dkt. No. 34-12).[1]

On July 21, 2022, Plaintiff filed the instant Motion seeking leave to amend the *ad damnum* from $1,000,000.00 to $5,000,000.00, alleging that there is newly discovered evidence that was not reasonably discoverable and intervening facts since Plaintiff served his SF-95 form on the government. (*See generally* Dkt. No. 34-15). On September 15, 2022, Defendants opposed the Motion, arguing that the Court lacks jurisdiction to award damages beyond the sum certain contained in Plaintiff's SF-95. (*See generally* Dkt. No. 39).

## II.    LEGAL STANDARD

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, a court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *in re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Nevertheless, the Court may, in its discretion, deny a motion for leave to amend in one of three instances: (1) the movant engaged in undue delay, bad faith, or dilatory motives; (2) the

---

[1] Plaintiff's estimates are derived from an economic report by Stan Smith, Ph.D. ("Dr. Smith"). (*See* Dkt. No. 34-12). Dr. Smith relied on the opinions of Dr. Dhawlikar, Dr. Shah, and Premiere Vocational Experts whom Plaintiff retained to prepare a Life Care Plan (future medical costs), an employability and earning loss evaluation, and a loss of household service evaluation. (Dkt. Nos. 34-9, 34-10, 34-11).

amendment would cause undue prejudice to the non-movant; or (3) amendment would be futile. *See, e.g.*, *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *BTG Int'l Ltd. v. Actavis Labs. FL, Inc.*, Civ. No. 15-5909, 2017 WL 529446, at *2 (D.N.J. Feb. 8, 2017). Ultimately, the decision of whether to grant leave to amend lies within the sound discretion of the Court. *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

However, proposed amendments to *ad damnum* clauses in cases brought under the FTCA are governed by a more stringent standard than that of Rule 15(a). *See Troilo v. Michner*, Civ. No. 13-2012, 2015 WL 12839014, at *2 (D.N.J. Nov. 17, 2015). Under the FTCA, "any party asserting a claim for money damages arising out of the negligent or wrongful act of a government employee must first file a claim with the administrative agency at issue." *Bravo-Garcia v. United States*, Civ. No. 13-2185, 2015 WL 224625, at *4 (D.N.J. Jan. 15, 2015) (citing 28 U.S.C. § 2675(a)). "Claimants are to present their claims to the agency on an executed [SF-95] or other written notice and must include 'a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.'" *Brooks v. United States*, Civ. No. 15-8589, 2018 WL 3536765, at *1 (D.N.J. June 25, 2018) (quoting 28 C.F.R. § 14.2(a)). A plaintiff may amend the SF-95 "at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. § 2675(a)" to treat the agency's silence as a final denial and file suit in federal court. 28 C.F.R. § 14.2(c).

Upon filing a claim for damages under the FTCA, a plaintiff is limited to the amount presented to the agency in the notice of claim "except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). The plaintiff bears the burden of showing that "newly discovered

evidence or intervening facts bearing on [a plaintiff's] injuries" warrants an increase of the amount claimed on the SF-95. *Schwartz v. United States*, 446 F.2d 1380, 1381 (3d Cir. 1971) (internal quotation marks omitted).

In considering the issue of *ad damnum* clause amendments, circuit courts have established three tests to determine whether an increase in damages under the FTCA is warranted: "the worst-case prognosis test, the reasonably discoverable/foreseeable test[,] and the change in expectations test." *Bravo-Garcia*, 2015 WL 224625, at *4. While the Third Circuit has yet to adopt a specific approach, the majority of circuit courts—and most trial courts within this district—have applied the reasonably discoverable/reasonably foreseeable test. *See Park v. United States*, Civ. No. 17-13139, 2020 WL 4282731, at *3 (D.N.J. July 27, 2020); *see also Salas v. United States*, Civ. No. 16-2485, 2021 WL 82268, at *7 (D.N.J. Jan. 11, 2021); *Bravo-Garcia*, 2015 WL 224625, at *6 (finding the reasonably discoverable approach consistent with the language of 28 U.S.C. § 2675(b) and best accommodating to the competing interests). In the instant matter, the Court agrees with the *Bravo-Garcia* analysis, finding it analogous to the facts presented in this case, and therefore applies the reasonably discoverable/foreseeable test.

## III. DISCUSSION

In opposing the instant Motion, Defendants argue that Plaintiff's "injuries and economic damages were reasonably foreseeable in January 2020" and that Plaintiff's Motion must therefore be denied. (Dkt. No. 39 at p. 23). Plaintiff, however, contends that he only became aware of the long-term consequences of the accident following his appointment with Dr. Shah on October 13, 2021—specifically, the need for additional surgeries, radiological assessments, pain management procedures, and physical therapy. (Dkt. No. 34-15 at pp. 11-12). Plaintiff further asserts that his initial surgery—the two-level disc replacement on March 25, 2019—"was first recommended by

Dr. Dhawlikar only after conservative care failed and not until November 21, 2018, nearly 8 months after the filing of the [SF-95]." (Dkt. No. 34-15 at p. 10).

As an initial matter, the Court notes that Plaintiff had almost two years within which to seek to amend the *ad damnum* amount; from March 23, 2018, when Plaintiff served his SF-95, (Dkt. No. 34-2), to February 6, 2020, when Plaintiff filed suit, (Dkt. No. 1). *See* 28 C.F.R. § 14.2(c). However, despite being diagnosed at the time of filing his SF-95 with a cervical herniated disc with cervical radiculopathy and lumbar spondylolisthesis of L4 with instability and vertical instability at L45 radiculopathy, and subsequently undergoing numerous fluoroscopic-guided caudal epidural steroid injections in 2018 and even neck surgery in 2019, Plaintiff did not attempt to amend the *ad damnum* amount prior to filing suit. Accordingly, the Court considers only the intervening circumstances that transpired *after* the filing of Plaintiff's suit on February 6, 2020, when Plaintiff exercised his option under 28 U.S.C. § 2675(a), thereby limiting the *ad damnum* amount to $1,000,0000.00—namely, Dr. Shah's January 17, 2022 report concluding that Plaintiff would require additional surgical intervention, pain management visits, and physical therapy. *See Salas*, 2021 WL 82268, at *9 (finding further treatment that was "clearly within the reasonably foreseeable realm of possibilities" at a time when the plaintiff could have amended his SF-95 does not justify an increase in damages under 28 U.S.C. § 2675(b)). Considering the record before the Court, these potential future medical interventions as detailed by Dr. Shah and as foretold by Dr. Dhawlikar were indeed reasonably foreseeable.

While Plaintiff's injuries may have worsened since the February 27, 2018 collision and may require additional treatment and/or surgical intervention, the claimed injuries themselves have nevertheless remained the same as claimed on his SF-95: "[i]njury to neck and back[.]" (Dkt. No. 34-2 at p. 2). Moreover, Dr. Shah's evaluation and future treatment recommendations are not

7

dissimilar to Plaintiff's diagnoses and treatment plan prior to filing suit. Indeed, before February 6, 2020, Plaintiff underwent surgery, attended pain management visits, underwent repeated injections, and was aware of the permanency of his injuries. (*See* Dkt. No. 34-8; Dkt. No. 34-13). Importantly, while the FTCA permits an increase to the *ad damnum* amount if there is "'newly discovered evidence not reasonably discoverable at the time of presenting of the claim[,]' . . . [i]t does not permit an increase on the grounds that negative outcomes of an expressly contemplated treatment for a known injury do not materialize until some later time." *Salas*, 2021 WL 82268, at *8 (quoting 28 U.S.C. § 2675(b)). Further, even if Plaintiff's future medical expenses will ultimately amount to more than Plaintiff initially anticipated, as indicated by Dr. Smith's economic report, "actual expenses are not the touchstone of the § 2675(b) exception." *Chamberlain v. United States*, Civ. No. 11-1808, 2012 WL 136896, at *5 (D.N.J. Jan. 18, 2012).

Plaintiff asks this Court to consider *Highhouse v. United States*, Civ. No. 14-140, 2017 WL 1187932 (W.D. Pa. Mar. 30, 2017). However, *Highhouse* is factually dissimilar to the instant matter. In *Highhouse*, the court allowed the plaintiff to amend the *ad damnum* amount based on, *inter alia*, injuries not yet diagnosed at the time the plaintiff filed his administrative claim. *Highhouse*, 2017 WL 1187932, at *13. In contrast here, Plaintiff has no new diagnoses. His injuries have not changed, rather they have worsened; they are known injuries the extent of which did not fully materialize until a later date. *See Salas*, 2021 WL 82268, at *8. Based on the foregoing, Plaintiff could have anticipated that his condition would require more aggressive treatment. He, therefore, has not met his burden of showing that an increase of the *ad damnum* amount is warranted. *See Schwartz*, 446 F.2d at 1381.

Accordingly, Plaintiff's Motion for Leave to File a SAC to Amend/Correct the *Ad Damnum* Damages Amount claimed on his SF-95 to $5,000,000.00 is DENIED.

## IV. CONCLUSION

Having considered the submissions of the parties, and for the reasons set forth above,

**IT IS**, **THEREFORE**, on this 5th day of December 2022,

**ORDERED** that Plaintiff's Motion for Leave to File a SAC to Amend/Correct the *Ad Damnum* Damages Amount claimed on his SF-95 to $5,000,000.00 (Dkt. No. 34) is hereby **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall terminate the Motion pending at Docket Entry Number 34.

**SO ORDERED**.

 /s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**